Good morning. It's an honor and privilege to be here, I must say. But may it please the Court. Counsel. Three decades, three alleged victims, three preserved heirs for what started as ten counts of alleged child abuse. And we're here seeking a remand for the third trial on the eight counts that are remaining and decisions on our evidentiary issues. The District Court erred in three fundamental ways. First, the District Court erred by denying Tina's motion to continue. This Court reviews a denial of a motion to continue on abuse of discretion. The second issue is the District Court erred when it admitted hearsay evidence under the excited utterance exception. It also erred when it admitted evidence of testimony under the residual hearsay exception. Regarding both of the hearsay exceptions, this Court interprets the interpretation is reviewed de novo. The application is reviewed for abuse of discretion, but de novo when constitutional rights are at stake, as they are here. The facts were fully set forth in Tina's briefing, and therefore, I will not restate them here unless the Court has questions. Otherwise, I may state specific facts as they relate to the issues. As to the motion to continue, the District Court abused its discretion when it denied Tina's motion to continue the retrial. You know, as I read the record and I looked at that particular question, I'm looking at what the judge had before it, or the court, the District Court had before it when it made the decision. And, you know, it never bothered to say what it was that Ms. Jannot was going to testify to, what the anticipated purpose of that testimony was, what element it was a defense. And I think the judge is left with the idea that perhaps what you're really talking about is the only thing that the evidence might have some bearing on was a sort of cumulative attack on the credibility of CS in a prior recantation. And if that's all that that was, how does that rise to the level of an abuse of discretion? Because that's a pretty deferential standard of review we're applying. Yes, Judge Erickson, I understand. The judge first, the District Court did not make any rulings or findings on the merits of our issues before it. But as far as whether or not there was an offer of proof made, again, that was not made, nor was it requested by the court at the time of the arguments. If we look at Vesey, when Vesey issued its offer of proffer, it was at the time that it requested its motion for a second trial. It was not during its request for its continuance. So I think Vesey stands for the proposition that we did not have to at that time make an offer of proof on what Ms. Jannot was going to testify to. You know, I get that. But the problem is, is that the judge makes the decision based on the information the judge has before it and the inferences the judge can draw from that information, right? And I'm just thinking, you don't want to give this judge much help in trying to figure out why you really needed a continuance here. The first, Judge Erickson, the first time that we had a hearing on the motion to continue, the arguments made by counsel was that I needed, I had issues with my private practice at that point, and we could not get the two witnesses. He did not ask, we explained that the witness could not make it that week, that she could not get child care the week of the 12th. He offered, he made the recommendation that we try to obtain a deposition of the witness. I thought at the hearing on the second motion that you, that defense counsel said we chose not to call that witness at the first trial. So let me try to make clear what that meant, Judge Loken. During the first trial, I subpoenaed a number of witnesses. I based it off of what I believed the government schedule was going to be and what my schedule would be for my witnesses. I understand. I've read all of the timing, yeah. So this particular witness was scheduled to appear at 4 o'clock that afternoon on Friday. I'm not talking about the first trial sequence. I'm talking about what was said to the court at the hearing on the second trial motion to continue. As far as? The government's brief says that the defense counsel said we chose not to call Janot, if I got the name right, for the trial. Yes, Your Honor. Not that we were, you know, the proxy. Anyway. I'm trying to explain what happened and why I chose not to call. But if that was said, that would, as Judge Erickson says, that would suggest to the court that we were not talking about anything more than cumulative evidence that would not be essential or could well be available. I disagree, Your Honor. And the reason for that is I chose because she was not subpoenaed to attend until Friday at 4 o'clock p.m. At 11 o'clock a.m. that morning, we were ready to close the case. I was not going to ask the jury to wait four to five hours and inflame them any further and take the chance that they would unanimously convict my client. But that's a tactical decision, right? I mean, here's the thing. I have granted many two and four-hour continuance in the midst of the trial, and you bring the jury in and you tell them, hey, the court has a conflict. I mean, kind of lie to them a bit and say, hey, the judge can't get here, we can't do this, and we're going to have to take a break. And I don't think anybody visits that harm on defendants. And I think that for the most part, trial judges don't say, oh, by the way, the defense has a witness that they can't get here and we need to take a break to let the witness get here. I mean, I think that would be an unusual sort of thing because it emphasizes some potential problem with the defense. You know, I mean, in my experience, Ben, most trial judges are trying, you know, desperately to make sure that whatever happens is fair. Fair, Your Honor. However, I made, I did make that tactical decision not to allow her to show up five hours after we were ready to close the case. I did. But I do not think that this motion to continue at this point should be tethered to that first case whatsoever. Counsel, I approach this from a slightly different perspective, but ultimately have the same question. I agree that Vestey supports your argument. I would also agree that it's an abuse of discretion to deny a motion based on the judge's vacation schedule. But I need to have you show me how there's prejudice. Your Honor, as we showed you, we had exactly 18 days from the end of the first trial to the beginning of that second trial. There was very little time to re-evaluate our strategy. We had one juror that voted not to convict, so it was an 11 to 1 on the first trial. That meant I needed to review and re-evaluate the strategy that we used, reconsider one other testimony I could or could not bring in. There were a number of other ways to go about that. We needed that time, more time, to be able to do that. We were talking about, at that point, we were talking about eight counts and two children, or no, at that time we were still at three alleged victims, ten counts. That's a lot of information. So not to allow us to go further, even in Vestey, Vestey had 25 days total. And there the Court found that it was prejudicial to Mr. Vestey not to have that, not to grant him his motion to continue. Because time is running short here, I'm also very interested in how the admission of the hearsay evidence or the evidence admitted under exceptions to the hearsay rule was not harmless error. Yes, Your Honor. So under the excited utterance exception, we had two witnesses that testified. We had Deputy Budovich and we had Cassandra Travasi. Again, as the Court is probably very familiar with, excited utterance requires a startling event, and the stress continues under the excitement. So I don't see how there's any way that these are excited utterances. But how is it not harmless error, given all of the other evidence in the case? If you take – so I think I understand your question correctly, Judge. So you're asking me how it was harmless error to Tina to allow this hearsay information? Is that the question? Why it was not harmless error. I'm sorry? Why it's not harmless error. See, the question is, is that we might all agree that whatever it is, it's not an excited utterance. And so it came in. Why is it not harmless? Well, it is harmless error. Right. So explain why. So when you take the four witnesses together, and I guess I'll answer the question as a whole for both the excited utterance and the residual exception rule. When you take the four witnesses, you have Deputy Budovich, who was the initial officer on scene. You have Cassandra Travasi, who was the social worker that was on scene. You then have Desiree Grobat, who was the alleged criminal investigator that came to the hospital that took video camera evidence and spoke to this child. And then you have the forensic interviewer. When you take all four of those witnesses' testimony under the hearsay exceptions that they were applied, out of the nine witnesses, you were left with very little evidence and likely no evidence that could prove that Tina did indeed commit these child abuse allegations. And that's why that these hearsay exceptions does lead to harmless error, is harmless, leads to prejudice to my client. Yeah. You're trying to say it's prejudice, and you just said it backwards a couple times, right? Yes. I apologize. That's all. That's no big deal. I followed you. But you think there's prejudice there. And that was our question, is point to us why it's prejudicial. Make your best factual argument why it's prejudicial. It is prejudicial. So Budovic's testimony involved providing information regarding the amount of food that the child had been deprived, being beaten by a cord and this and that and the other. Travesee tried to testify to how she reacted when she returned to the home five hours after the hospital visit. Then you have Desiree Grobat, who was an officer with the tribal court, with the tribal police department, who claimed to be a criminal investigator or alleged to be a criminal investigator, who has a body cam on, who's over there taking pictures and talking to the child victim and asking all sorts of questions without anyone present. And this video was played for the jury. It inflames the jury. She doesn't ask appropriate questions. She has a conflict of interest that's identified, and she's removed from the case within days. We still don't know what the conflict was. She's taken improper measurements. She records the injuries or measures them in meters, records them in inches, which changes everything about the size and the amount of injuries that she has. When you look at forensic interviewer Leibel, so Leibel has already met with the social workers. She's met with the police department. She's even met with the special agent for the government. She has all of this information in her head. She goes into this interview with this child. The child gives her very little information because she doesn't claim all of this abuse as they've tried to put forth. And then she goes and she starts, she goes out, she talks to this team again, comes back into the interview, and then starts asking suggestive questions like, weren't you deprived of food? Weren't you this? Didn't this happen to you? Were you kicked in the groin? All of that information is what led to Tina's conviction on these ten counts of alleged child abuse, or at least the nine counts of alleged child abuse. So I believe it is very prejudicial to Tina that this hearsay information and evidence came in to the court. At this point, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you. Ms. Hoffman? Thank you. Thank you, Your Honors. May it please the Court? Counsel. My name is Annie Hoffman, and I represent the United States on this appeal. I will take up the issue of the motion to continue the retrial of this case. Here on this record, the district court did not abuse its discretion in denying Sully's motion to continue, and Sully was not prejudiced by that denial. A district court has very broad discretion in deciding whether to grant or deny a motion for continuance. Continuances are generally not favored and should be considered. The moving party themselves shows the district court a compelling reason to grant the continuance, and the factors that the Eighth Circuit has held should be considered to determine whether an abuse of discretion occurred include whether counsel had sufficient time to prepare for trial, whether counsel's conduct at trial shows that counsel was well prepared, and whether the denial of  I would like to look at the particular circumstances of this case, and the focus should be whether the district court abused its discretion given the grounds presented by Sully at the time Sully made the motion to continue. And here on the movement is responsible for showing prejudice. Not to show prejudice, but just to show compelling grounds as to why the continuance should be granted. Yes, Your Honor. Yes, Your Honor. So we need to look at the reasons put forth by Sully when Sully filed that motion to continue the retrial after it was reassigned to a different district court for retrial. The reasons cited by Tina Sully were defense counsel's private practice caseload and the availability of two defense witnesses. One was a private investigator who testified at the first trial, was the family home. The other was Candy Janot, Ms. Janot, who was a tribal social worker, child protection worker, who was specifically appointed to work on C.S.'s case at the tribal level because the defendant, Tina Sully, her husband was a high-ranking elected tribal official at the time. During the telephonic hearing on the motion to continue, which the district court heard Sully's reasons for wanting the continuance, it was discussed about the witness availability issue. The government offered to stipulate as to foundation for the private investigator's testimony, which we did at trial. Regards to Ms. Janot, I think it's important for the court to consider, and the district court considered this, is that Ms. Janot was on Tina Sully's witness list for the very first trial, and Sully chose not to call her as a witness. Well, there was a little more to it than that. Yes, there was a timing issue, certainly, Your Honor. And I understand, Your Honor, you pointed out you didn't want to delve too deeply into the timing issue at the first trial. But I do want to correct what I believe was a slight misstatement of the record that Ms. Sherrill made regarding the timing of the first trial. My practice when I'm in trial is every night after the court excuses the jury, I advise the court and defense counsel when I anticipate resting. And in the first trial, I anticipated resting sometime on Thursday, and that was consistent. Is the record on appeal? It's part of the original record. Oh. I'm sorry, Your Honor? Well, you're giving your personal recollection of what happened. That's not typically in the record on appeal. Well, it is on the first trial court record, and it was part of my brief about how I advised defense counsel of the timing so she could adjust. Is that in the record on appeal? Yes, my understanding, Your Honor. It's in the trial transcript from the first trial. What pages should we read? I don't want to – this is wasting oral argument time. Just give me transcript pages to read. Sure. Your Honor, I don't have them offhand, but they are cited in my brief. I'm sorry, I don't have those at hand. Oh. But the point is when – Go ahead. I'm sorry. My point, Your Honor, is that if Ms. Janot were such a critical witness to the defense in the first trial, why was she not called? Why was there no record made by Ms. Sully as to the nature of why this witness was so critical? Instead, in the motion to continue, defense counsel merely argued that this witness was critical or could have impacted the case but did not specify how. She did not show any compelling reason to give the district court to grant a continuance here. There was a statement made that the judge's, you know, vacation schedule was driving this train, and I just want – I mean, as I read what Judge Pearsall told the parties was, I have trials in five of the next six weeks, and we know that because of Judge – this is right at the time that Judge Vikins retires, retires, retires, and they've got judges from all over the Eighth Circuit, district judges going in there to try cases, to try and clean up that calendar, because it's 300 cases backlogged, right? And that's, you know, I guess that's something I know because I volunteered to go down there and try some of those cases. But the bottom line is that the judge says, I've got five jury trials – actually, he's got seven jury trials over a five-week period, and the one week he's not in jury trial, he's got three days of motion hearings, and he's like an elderly dude who is going to Florida at the – you know, for Thanksgiving and going to be gone until spring, and he says, I don't really have a place to make this fit if you don't give me a compelling reason as to why this witness is necessary. And nobody ever says, here's what this witness is going to testify. And I just don't think it's – well, whatever, I guess what I think or don't think on that particular point isn't important, but do you think it's an abuse of discretion for the judge to say, I've got seven trials in the next five weeks, and I am – I don't know, 78 years old, and I'm leaving for a few weeks in the dead of winter in South Dakota. I mean, I just don't – do you think that's an abuse of discretion if they never tell you why they need the witness? I do not, Your Honor. And Judge Erickson, you accurately state the situation that was happening in the District Court of South Dakota at that time. And on this record, it was not an abuse of discretion because Tina Sully did not provide any compelling reason as to why a continuance was needed. There were discussions about other opportunities to obtain that witness's testimony, including taking that witness out of order, taking a criminal deposition. Government – I indicated that we would make anything work. Continuance was denied. A second motion to continue – Was there ever an offer or a request on the part of the defendant that they be allowed to take the deposition of Ms. Jannat? No, Your Honor. After that telephonic motion hearing, where I indicated I would make it work, I did not hear anything from defense counsel. And that segues to – Do you believe that's a tactical decision? Potentially. Potentially. I can't speculate as to what defense counsel was doing in the interim after the motion to continue was denied. And so I also briefly wanted to touch on the second motion to continue that the defendant made orally at the pretrial conference the day before the second trial. Again, there was an opportunity to say, hey, Judge, I need Ms. Jannat here. This is what she's going to testify about. This is why she's critical. But she didn't go beyond making blanket statements that this person is critical. She didn't provide the judge anything, any sort of offer of proof, any affidavit by the witness, or specify what steps, if any, she took to try to secure that witness's testimony. And so given the reasons presented to the Court at that time, the District Court did not abuse its discretion because it didn't have the discretion and it didn't have much to work with. Counsel, I have a question regarding the evidence that was admitted under the residual exception to the hearsay rule. Yes, Your Honor. Specifically as to the videos, the gravat and libel videos. Yes. How were those videos more probative of the alleged abuse of CS than other evidence that the government could or did offer? Because I believe that's one of the requirements for admission under that exception. Yes, Your Honor. I will say that these issues were taken up after the minor child, CS, herself testified at trial. And so the District Court could weigh how that child did on the stand. She was about 15, 16 years old at the time of trial, which I know, if you just look straight at her age, that's not typically a case where residual hearsay is offered. But on these specific facts. This was also not a sexual abuse case. Most of our, in fact, I believe all of our precedent is in the area of sexual abuse. That's not this case. Correct, Your Honor. But I do know that it has been used in some cases involving some child physical abuse, too. To go back to my question. Yes, Your Honor. How is it more probative than the other evidence that the government could or did offer? Yes, Your Honor. I believe it's more probative because when CS testified, it's important to consider that nearly more than two years had passed between when she ran away and made her disclosures and when this case finally came on for trial. She had a difficult time testifying. There were lots of pauses. There were lots of her saying, I don't remember, I don't know. She struggled with testifying in front of the woman who she still considered to be her mom, given the horrific abuse that she suffered for years. She testified that she still loves her mom and just wanted mom to stop hurting her. And so I think it's probative because when she testified, there were some. Well, not probative, but more probative. Yes, Your Honor. There were some inconsistencies that came out in her testimony on trial, including the one that sticks out is the source of her, of the massive bruise on her inner thigh that was present the day she ran away. She testified that, that she had that bruise on her leg the day she ran away, but she did not remember what caused it. And so I think it was important, given some of her hesitancies in testifying, that the jury was able to see what she testified about when it was much closer in time to the abuse she suffered. And so we take, number one, the body camera footage from the tribal criminal investigator who responded to the hospital the day she ran away, and then three days later, the forensic interview. And it's more probative because as the district court found, the district court who observed C.S. testify saw her hesitancy, saw her reluctancy to truly tell the jury the full scope of what her mother had done to her over several years. And the district court noted that C.S. was certainly a troubled individual, had had a lot of behavioral problems, as developed by defense counsel on cross. She had been through several different placements in the time since she ran away. And so I think... I don't suppose that this evidence was improperly admitted, as well as the excited utterance evidence. Can you address for me whether or not that was harmless error? Yes, Your Honor. I believe that the most straightforward way for the court to analyze this case, to analyze the evidentiary issues, is the harmlessness standard. This Court doesn't necessarily need to delve into an analysis on the two hearsay exceptions that were brought forward in this case, because even if it were error for the district court to admit that evidence, it was harmless. And here's why. This Court needs to consider the other evidence regarding C.S.'s abuse that was not challenged on appeal, that is not pending before this Court, including C.S.'s testimony herself, the testimony of Arliss Kafka. That is the neighbor to whose farm C.S. ran away that day, about two and a half miles out in rural Wagner, South Dakota. And in addition, Your Honor, there is substantial evidence of C.S.'s physical injuries in this case, as observed and documented by multiple witnesses. And that evidence is not raised on appeal here. And specifically, there is evidence from examinations of C.S. by two separate medical professionals, including certified nurse practitioner Ryan Kocher, who examined C.S. the day she presented at the hospital, and Dr. Nancy Free at Child's Voice, who examined C.S. three days later, who separately and independently found that C.S.'s physical injuries were consistent with the type of abuse they disclosed. Does that include the scar on her head? Yes, Your Honor. The scar on her head that she said, that's where mom hit me with a hanger. A deep-looking scar that has never fully healed and hair hasn't grown back there. And additionally, we haven't even discussed the other victim in this case, D.F.H., whom Sully does not reference on appeal. That is a separate victim, a source of five counts of conviction, a similar child who, before C.S. was even in the house, was fostered then adopted by Sully, and who was similarly abused by Sully, beaten with various objects, starved for days at a time, emotionally abused. And so we've got that, also corroborating evidence showing this pattern that Tina Sully had with picking out one child at a time in her house to abuse. I'd like to briefly circle back to the Vesey case on the motion to continue. I understand why Sully relies on Vesey as her main case for the motion to continue, and I see why, because there are some similarities. There was a mistrial, quick turnaround before the retrial, and then a motion to continue, which was denied. But that's where the similarities end. I think Vesey is distinguishable from the facts here, because in that case, two weeks before the retrial, the government filed a 404B notice with brand new witnesses to provide additional testimony to incriminate the defendant. Defendant didn't have time to run down any defense to that. Motion to continue denied after trial convictions. There, the defendant provided sworn affidavits of its own new witnesses that would have contradicted the new witnesses brought by the government. And so here, this case is completely different from the facts in Vesey, and it's easily distinguishable. Here, on the retrial, the government tried essentially the same case. Indeed, I call one less witness than I did the first trial. The exhibits were largely the same. There was no reason to continue the trial, especially given the fact that Sully never showed compelling reason to the district court to do so. And if there are no further questions, I respectfully request that this court affirm in all respects, and I'll take my seat. Thank you. Thank you. For rebuttal, Ms. Sherrill. Thank you, Your Honor. So going back to the motion to continue and not providing any offer of proof as to what Kendi Janot would have testified to, again, that was my decision. It was a decision not to disclose our trial strategy or what information we were going to be seeking from Ms. Janot. Is that the same reason why you never availed yourself of the opportunity to take a deposition for purposes of trial? No, Your Honor, it is not. So when we had the motion to continue hearing on the first time, the judge did recommend that we take her deposition. We had exactly six working days to do that at that time. Well, working days? I mean, I'm no trial lawyer. I mean, we work on Saturdays and Sundays in preparation for trials, including the taking of depositions. Yes, Your Honor, and I do work as well, and I did that particular long weekend of Labor Day. But I was not able to get a schedule time to permit myself to go take this deposition. I do want to note, though, that the judge in the first motions hearing noted that he could have done this trial two weeks later. At that point, the government said, our witness isn't available, our expert's not available. And at no time was it ever suggested that the government obtain their witness's deposition and move the trial by those two weeks. My witness was in North Dakota. Their witness was local. I just want to make sure that that is on the record and clear. As far as the residual exception that you spoke to with her, there are five things that have to be considered when you're looking at trustworthiness of either a video or of the testimony. And in this case, one of them is the consistency of the testimony of the victim. In this case, we do not have consistency in the statements that Claudia made or that CS made from person to person to person. And for that reason alone, the residual exception should not have applied to Amanda Leibold, the forensic interviewer's testimony, nor should that video have been shown. My time is up if there are no other questions. Thank you. Thank you.